## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**HERNANDO MARIN-ECHEVARRI,**

    **Petitioner,**

    **v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**Civil No. 17-1550 (ADC)**
**Related: 13-CR-597[1]**

## <u>OPINION AND ORDER</u>

Hernando Marín-Echevarri ("petitioner") filed a *pro se* petition pursuant to 28 U.S.C. § 2255 ("petition"). **ECF No. 3.** For the reasons that follow, the petition is **DENIED.**

**I.    Background**

Between 2012 and 2013, petitioner conspired with others to import between ten (10) and thirty (30) kilograms of heroin into Puerto Rico from outside the United States (Colombia and Venezuela). Petitioner would communicate from Colombia with other members of the conspiracy in Puerto Rico and Venezuela to coordinate the smuggling, importation, transportation, and distribution of heroin in Puerto Rico. Members of the conspiracy packaged suitcases with the kilos of heroin in Colombia and used couriers to transport the suitcases to Venezuela and later into the United States. *United States v. Hernando Marín-Echevarri*, 846 F.3d 473, 475 (1st Cir. 2017). Members of the conspiracy also sent heroin to Puerto Rico via the United States Postal Service. *Id*. Proceeds were physically transported from Puerto Rico back to Venezuela and Colombia or via wire transfers, as per defendant's instructions. *Id*. The transfers were cloaked by using the names of individuals who were not part of the conspiracy. *Id*.

On August 23, 2013, a grand jury returned a three-count indictment against petitioner and 18 other individuals charging a conspiracy to possess one kilogram or more of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), and 846 (Count One), conspiracy to import one kilogram or more of heroin into the United States, in violation of 21 U.S.C. §§ 952(a) and 963 (Count Two), and conspiracy to launder the proceeds of these controlled substance offenses, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 1956(h) (Count Three). **13-CR-597 (ADC), ECF No. 3**.

On May 13, 2015, petitioner pled guilty to Counts Two and Three of the indictment pursuant to a plea agreement ("plea agreement"). *Id*, **ECF No. 230**. Specifically, petitioner agreed to plead guilty to Counts Two and Three and the government agreed to dismiss Count One. Of particular relevance is that the government and defense counsel submitted, as part of the plea agreement, a preliminary calculation of the sentencing guidelines. Specifically, Section 7 of the attachment to the plea agreement, under the caption "Sentencing Guidelines Calculations," provided that "the United States and the defendant submit the following advisory Sentencing Guidelines calculations as to Counts Two and Three of the Indictment." *Id* at 5. The plea agreement made reference to "U.S. Sentencing Commission Worksheets A, B and D "[("worksheets")] attached to the Plea Agreement. The sentencing guideline calculations contained therein, assumed a criminal history category (CHC) of I but, there was no stipulation as to the defendant's criminal history category. *Id*. Within the worksheets, petitioner's base offense as to Count Two, was determined at a level of thirty-four (34), provided for a three-point enhancement in view of defendant's managerial role, resulting in an adjusted base offense level

of 37. . The parties proceed then, to make a guideline calculation as to Count Three, which the parties determined, called for a base offense level of 22. Taking into account the highest offense level and deducting three points, provided defendant's timely acceptance of responsibility, the adjusted offense level was 34, which along with a CHC I; called for an imprisonment range of 151 to 188 months of imprisonment. *Id*, **ECF No. 230** at 5.

> During the change of plea hearing, as indicated by the Appeals Court:
>
> > both the Assistant U.S. Attorney (AUSA) and the magistrate judge mentioned the guidelines calculation in the worksheets. After submitting the worksheets to the court and explaining how they reached a total offense level of thirty-four, the AUSA confirmed that '[t]he recommendation in this case... would be that the defendant will serve a term of imprisonment at the lower end of the applicable guideline range determined by the Court, depending on the defendant's criminal history category.' The magistrate judge later made sure [petitioner] understood that '[i]n determining your sentence, the presiding judge will consider but may not follow the guidelines calculations, those calculations contained in your agreement in those worksheets.... [T]hese guidelines are of an advisory nature ... and the presiding judge may follow or may not follow them....'

*Marín-Echeverri*, 846 F.3d at 476.

The United States Probation Office filed a presentence report ("PSR"). Petitioner, through counsel, filed timely objections to the PSR arguing that it incorrectly calculated the applicable sentencing range and it assigned the wrong role-in-the-offense level ( a four level adjustment for a leadership role, rather than three points for a managerial role stipulated by defendant). **13-CR-597 (ADC), ECF No. 386, 388**. The Court ordered certain changes to the PSR based on the parties' concerns. *Id* at 415. An amended PSR was filed on September 3, 2015.

The amended PSR provided for grouping of both offenses, since the money laundering count was treated as a specific offense characteristic of Count two. It reflected an adjusted offense

level of (40) for  by applying U.S.S.G. § 2S1.1(a)(1). That is, a base offense level of thirty-four (34) enhanced by four (4) levels for defendant having  played a leadership role in the offense, U.S.S.G. § 3B1.1(a), and increasing  two (2) levels because the money laundering conviction was under 18 U.S.C. § 1956, per § 2S1.1(b)(2)(B).

Evidently, the parties' computation within the worksheets attached to the plea agreement and the PSR included different calculations. On one hand, the parties' calculated the adjusted offense level for the conspiracy to import count at a base offense level of thirty-four (34) and included a three-level upward adjustment for defendant's managerial role in the offense under U.S.S.G. § 3B1.1(b). The adjusted offense level was considered to be (37). It also considered an adjusted offense level of twenty-two (22) for the money laundering count pursuant to U.S.S.G. § 2S1.1(a)(2). On the other hand, the PSR marked the adjusted offense level for money laundering to be forty (40) by applying U.S.S.G. § 2S1.1(a)(1).[1]

During sentencing, the defense challenged the PSR calculation by stressing that the PSR's deviation derived from the misapplication of the offense grouping guidelines, a two-level enhancement (under specific offense characteristics), and the role-in-the-offense adjustments. However, "[d]efense counsel did not challenge the probation officer's or the court's determination that [petitioner] was in criminal history category III." *Marín-Echeverri*, 846 F.3d at 477.

---

[1] While the parties allude to the fact that they had done "grouping" of offenses, they actually calculated "units" as per offense of convictions. It was the probation officer the one actually doing a guideline analysis providing for grouping of offenses. **13-CR-597, ECF No. 584** at 10-11.

After listening to the parties' arguments, the Court determined that the correct guideline calculation as to the base offense level, was the one made by the probation officer, and that the evidence on record established defendant's leadership role.[2] Accordingly, the Court sentenced petitioner to an imprisonment term of 262 months of imprisonment under Count Two, which was the lower end of the applicable guidelines range, as determined by the Court, concurrently with 120 months of imprisonment under Count Three, to be followed by a five (5) year term of supervised release. **13-CR-597 (ADC), ECF No. 429.**[3]

Petitioner filed a notice of appeal. **13-CR-597 (ADC), ECF No. 435**. Petitioner argued that the government violated the terms of the plea agreement and that he received constitutionally ineffective assistance of counsel during plea negotiations and sentencing. On January 25, 2017, the Court of Appeals determined there was no breach of plea agreement and affirmed the sentence. The Appeals Court dismissed the ineffective assistance of counsel claim without prejudice, noting that "as a general rule, this court does not review ineffective assistance of counsel claims on direct appeal". Considering that the ineffective assistance of counsel claim was dismissed without prejudice, the claim does not preclude a collateral proceeding, such as the instant petition. *Marín-Echeverri*, 846 F.3d at 475.

On April 27, 2017, petitioner filed the instant petition arguing that: (i) the government breached the plea agreement, (ii) counsel was ineffective, given his failure to properly analyze

---

[2] During sentencing, the Court inquired from defense counsel whether she agreed with a base offense level of 34 for Count Two. Counsel agreed. The Court also inquired as to the applicability of a two-point enhancement provided the specific offense characteristics, to which it was also agree. The only dispute remains as to whether three (3) rather than (4) point were to be allocated in light of defendant's role. **13-CR-597, ECF No. 584** at 12-13.
[3] Based on an adjusted offense level of 37 and a CHC III, the guideline range was from 262-327 months of imprisonment

or calculate the sentencing guidelines (iii) the sentencing Court failed to consider petitioner for a minor role reduction, (iv) petitioner is entitled to double the time credited, for time served under custody while awaiting extradition in Colombia. *See* **ECF No. 3-1** at 9-21, 21-25, 25-26, 26-27, respectively. The government filed a response at **ECF No. 16**.

## II.    Legal Standard

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by [an] Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "[T]he statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (*citing Hill v. United States*, 368 U.S. 424, 426-27 (1962)).

Claims that do not allege constitutional or jurisdictional errors are properly brought under § 2255 only if the claimed error is a "fundamental defect which fundamentally results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Id.*

To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first requirement necessitates a demonstration that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citations and internal quotation marks omitted). This standard is "highly deferential" and courts "indulge a strong presumption that . . . under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Walker v. Medeiros*, 911 F.3d 629, 633 (1st Cir. 2018) (citing *Strickland*, 466 U.S. at 689).

The second prong requires that defendant "show that the deficient performance prejudiced the defense, which requires proof that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jaynes v. Mitchell*, 824 F.3d 187, 196 (1st Cir. 2016). Failure to prove either prong of an ineffective assistance claim is fatal to the claim. *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012). The petitioner bears a heavy burden of proof in this regard. *See Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996).

However, the court need not address both requirements if the evidence as to either is lacking. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

**III.    Discussion**

**A.  Ineffective assistance of counsel**

Sixth Amendment right to counsel extends to the plea-bargaining stage. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). "With regard to plea agreements, counsel has a critical obligation ... to advise the client of the advantages and disadvantages of a plea agreement." *Parsley v. United States*, 604 F.3d 667, 671 (1st Cir. 2010).

> In the context of a guilty plea, a successful ineffective assistance of counsel claim requires a defendant to show that (1) counsel's representation fell below an objective standard of reasonableness, *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)); and (2) there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial, *id.* at 59.

*U.S. v. Rivera-Cruz*, 878 F.3d 404, 410 (1st Cir. 2017) (internal quotations marks omitted).

### (i)      The Court of Appeals

The Court of Appeals for the First Circuit denied, without prejudice, petitioner's ineffective assistance argument "to its reassertion, if the defendant so chooses, in a collateral proceeding." *U.S. v. Marín-Echeverri*, 846 F.3d at 480. However, the Court of Appeals noted "[w]e do think that the form of plea agreement used in this case created a nontrivial risk that the defendant would misread it unless well counseled." *Id*. The Court of Appeals added that while

> a lawyerly reading of the agreement reveals that all it really says is that the government will recommend the low end of the range as determined by the court, whatever that may be, a lay person could easily look at this plea agreement and assume that it says something more. After all, why bother with the worksheets otherwise—especially since they grossly underestimated the range, provided no examples of the higher ranges possible, and might have been read as implying that criminal history was the only variable? With such an agreement, the government may well risk its ability to sustain the voluntariness of the plea should the evidence support a claim that defense counsel did not explain the bait-and-switch potential. *Id*.

The Court of Appeals hinted that the "record does not rule out the possibility that defense counsel noticed the potential problem in the calculation of the total offense level… and chose not to bring it to the government's attention in the hope that it would go unnoticed, to the benefit of her client." *Id*.

In spite of the concerns highlighted by the Appeals Court, the record in full, dispels any such doubts. The record supports inferences that the parties' negotiation process was one carried out in good faith, took significant time, including a postponement of sentence to further negotiations. Both, counsel for the government and the defense agreed upon the calculations, and went at length to do the worksheets and to have them attached to the plea agreement. In essence, it appears that the parties, while intending to group offenses, did an independent guideline analysis per offense and proceeded to assign "units." A discrepancy in guidelines interpretation and computation does not amount to an automatic neglect, more so, when the defendant is alerted to the fact that the guidelines are advisory in nature, and that such guidelines remain subject to review by the probation officer and the Court's final determination. In the case at bar, the base offense level was correctly determined at 34. The discrepancy was based on the parties' failure to consider a specific offense characteristic (the conviction under sec. 1956) and the extra point the Court added by considering defendants role as one of "leadership," rather than "managerial." Consistent with the parties' agreement, defense counsel at sentencing, objected to a different guideline computation and advocated for what had been agreed by the parties. **15-CR-597, ECF No. 584** at 3-12. Despite of what petitioner may now argue at hindsight, during sentencing,  the entire guideline discussion was held in his presence, and

when questioned as to the correctness of the pre-sentence report, he reiterated, in multiple occasions, to be in agreement, and not to have any objections to its contents , of which he was well aware, except as to the information describing actions undertaken by some co-conspirators. Id at 20-26. As discussed below, the record reflects that petitioner was well aware, that such guideline computation was not final or binding upon the Court.

However, because failure to meet either prong of *Strickland* is fatal, *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012), the Court finds that it need not delve into the effectiveness of petitioner's counsel.

**(ii)      Prejudice**

The "prejudice[] requirement… focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Thus, in the context of sentencing guidelines calculations, "the absence of any error in sentencing would eliminate any prejudice, and therefore [petitioner]'s ineffectiveness claim." *Cofske v. U.S.*, 290 F.3d 437, 441 (1st Cir. 2002)(emphasis added).

Petitioner alleges  that counsel negotiated the plea agreement based on erroneous interpretation of the United States Sentencing Guidelines ("Sentencing Guidelines"), specifically U.S.S.G. §§ 3D1.2, 2s1.1 and (b)(2)(B), 2D1.1(c)(3). **ECF No. 3-1** at 22. He adds, counsel "lack[ed] knowledge of the guidelines." *Id* at 23. Based on petitioner's allegations, counsel's "error exacerbated when, at sentencing, [she] persisted on the correctness of the analysis from the plea agreement." Ultimately, petitioner asserts that he was "prejudiced" "in that he relied on a plea agreement upon which his own trial counsel… incorrectly calculated the… offense level," "[b]y

entering into the plea based on those representations, he received a sentence which was six to nine years longer that the calculations presented in the worksheets." *Id*. Petitioner avers he "did not receive from his counsel... accurate information as to the applicable U.S. Sentencing Guidelines, or sentence [he] was facing prior to entering into a plea agreement." *Id* at 24.[4]

However, petitioner does not claim that but for counsel's error he would have insisted on going to trial. *See U.S. v. Rivera-Cruz*, 878 F.3d at 410. Aside from a general request for habeas relief "to proceed to trial," not a single line in the petition stands for the proposition that petitioner would have rather proceeded to trial if he knew that entering into a plea agreement would represent an additional "six to nine years" of imprisonment in his sentence. **ECF No. 3-1** at 24. Rather, petitioner contends the "representations in the [plea] agreement… mislead" him as to the "effect of the plea agreement." *Id* at 15. The plea agreement, he adds, "specified the counts [he] would plead guilty to, as well as the maximum penalties that could be imposed." *Id* at 11. But petitioner does not assert that faced with the risk of a sentence "six to nine years longer," he would have insisted on going to trial. Presumably--as highlighted in the government's response--because petitioner (as to Count One) "faced a potential life sentence." **ECF No. 16** at 9. As it stands, petitioner seems to request habeas relief solely because an error was committed by his attorney in calculating the sentencing guidelines, but nothing in the petition indicates that "but for counsel's" mistake the result of the plea bargain process would have yielded a different result.

---

[4] Petitioner's memorandum in support of his petition generally expounds that among the relief sought, "the Court would either" "re-sentence, or grant, defendant the choice of re-entering into a new [p]lea [a]greement or proceed directly to trial by jury." **ECF No. 3-1** at 27.

Petitioner's prejudice argument is also undermined by the record. Via plea agreement petitioner acknowledged "that the Court may impose a sentence in accordance with the applicable provision(s) of the Sentencing Guidelines, Title 18 United States Code, § 3551, et seq.[], which are now advisory": "as determined by the court". **13-CR-597(ADC), ECF No. 230** at 3,5. Moreover, petitioner acknowledged, "sentence is within the sound discretion of the sentencing judge and the advisory Sentencing Guidelines… the Court is not a party to this Plea Agreement and thus, **is not bound by this agreement or the sentencing calculations and/or recommendations contained herein.**" *Id* at 4 (emphasis added). Within the plea agreement defendant was placed on notice that the "court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense" of conviction and that if the court were to impose the maximum statutory sentence, for that reason alone, he will be precluded from withdrawing his guilty plea. Id at 4. During the change of plea hearing, petitioner affirmed he discussed the entirety of the plea agreement with counsel, he understood its terms, and agreed to all of them. **13-CR-597(ADC), ECF No. 597** at 8, 9 (referring to the plea agreement documents, "I understand and agree completely"). Also, the plea agreement made clear that calculations done by the parties assumed a CHC I, but that ultimately, there was no stipulation as to defendant's criminal history category. **13-CR-597(ADC), ECF No.230** at 7,9.

Petitioner does not claim that counsel failed to inform him of the non-binding nature of the plea agreement as to the Court's ultimate decision related to his sentence. But even if the Court assumes that counsel failed to properly advise petitioner on this subject, before accepting his

guilty plea, petitioner was made well aware of the Court's discretion to adopt or reject the

recommendation in the plea agreement.

Before accepting petitioner's guilty plea, the Court specifically explained to him:

> THE MAGISTRATE: You have a type B plea, Mr. Marín, which means that your agreement is under a specific rule of criminal procedure, Rule 11(c)(1)(a) and (b), which means that your agreement is that **a recommendation will be made to Judge Delgado but, if she rejects the recommendation for some reason, under that rule, you will not be allowed to withdraw your plea. I need to make sure that you understand the type of plea you're getting into. Do you understand? 13-CR-597(ADC), ECF No. 597** at 9 (emphasis added).

> THE DEFENDANT: I understand perfectly, your Honor. *Id* at 10.

> […]

> THE MAGISTRATE: In determining your sentence, the presiding judge will consider but may not follow the guidelines calculations, those calculations contained in your agreement in those worksheets. They render ranges of time to be served as the appropriate time. I need you to understand that these guidelines are of an advisory nature, okay, and the presiding judge may follow or may not follow them and **she may impose a sentence that could be more severe or less severe**, always understanding that there is a statutory minimum of ten years. Do you understand this? *Id* at 18.

> THE DEFENDANT: I understand perfectly, Your Honor. *Id* (emphasis added).

> THE MAGISTRATE: In addition to the sentencing guidelines and the statutory minimums and maximums that I've already explained, there is something called the sentencing guidelines, I'm sorry, the sentencing factors. The sentencing factors are contained at 18 USC, Section 3553(a). These factors are as follows: The seriousness of the offense, the need for deterrence of criminal conduct, the need to protect the public from further crimes, the need to provide defendants with educational, vocational, medical training, medical care, the need to provide restitution to any specific victim and the Court may take into account any special characteristics on the part of the defendant to be sentenced, anything

particular, anything that would merit any weight. Those are the factors. Do
you understand them? *Id*.

THE DEFENDANT: I understand perfectly, Your Honor. *Id* at 19.[5]

Although petitioner may now argue  feeling  misled by the calculations performed by his

counsel and counsel for the government , he cannot assert that he was unaware of the possibility

that  the Court would reject the plea agreement's recommendation and impose a different

sentence under the applicable Sentencing Guidelines. The record reflects he was so advised in

writing within the plea agreement, most likely by counsel when discussing the same, and by

counsel for the government and the Magistrate Judge at the Rule 11 hearing. Actually, during

the change of plea hearing, the government was asked to summarize, in defendant's presence,

the extent of the sentencing recommendation agreed upon. At that point, the government stated:

"The recommendation in this case[] ...would be that the defendant will serve a term of

imprisonment at the lower end of the applicable guideline range determined by the Court,

**depending** on the criminal history category." **13-CR-597(ADC), ECF No. 597** at 9-11.

Even if counsel did in fact commit an error, which resulted in a flawed worksheet calculation

of the recommended sentencing, the truth of the matter is that that petitioner was fully aware

that the sentencing recommendation was contingent to his undisputed criminal history

category, which was not stipulated, and to a guideline calculation that was advisory in nature

---

[5] It must be noted that petitioner Echevarri, a 59 years of age businessman, throughout the Rule 11 colloquy demonstrated to be 'lucid, oriented,...to understand the proceedings,...aware of the nature of proceedings..." as stated by the magistrate judge who indicated was observing his demeanor. **13-CR-597, ECF No. 597** at 6. Throughout the proceedings, petitioner was not providing monosyllabic responses but rather, answered in complete sentences, was coherent and actively participating by even asking for time to consult with counsel when he felt was needed. Id at 12

and that the Court had the discretion to impose, up to the statutory maximum sentence without him being able to withdraw his plea, simply because he disagreed with the sentence imposed.

Considering that: a) petitioner was repeatedly informed that the guidelines were advisory, b) the sentence recommendation was contingent to the future determination of his criminal history category, c) the plea agreement  was a non-binding one (type B), d) such sentence, could be up to the maximum by statute, and e) the Court made petitioner aware of the Court's discretion to reject the sentence recommendation, petitioner cannot assert he received a prejudiced defense.

Finally, it is worth noting that petitioner was sentenced in accordance with the calculations included in the PSR.  The PSR containing a different guideline calculation than the one in the plea agreement which was timely discussed with defendant **15-CR-397, ECF No. 584** at 20.Petitioner, who had listened to defense counsel's arguments,  was specifically asked if the "information that appeared in the PSR was correct". The defendant indicated "well, I read the report and I see some things that I think are incorrect". Id at 20. The sentencing court, while alerting petitioner of the importance of the court "having a clear scenario" of his concerns, continued to explore the extent of  petitioner's statements and disagreements with the contents of the PSR, in great detail, actually inquiring from defendant as to the accuracy of the data within the PSR , by sections and by paragraphs. Id at 21-26.  No objections were voiced by petitioner in regards to the guideline computation or the parties' sentencing recommendation. While in court for sentencing, after stating that he had discussed the PSR with his counsel, petitioner answered the Court's inquiry as follows:

THE COURT: Do you understand that the information that appears within that report is correct?

THE DEFENDANT: Well, I read the report and I see some things that I think are incorrect.

THE COURT: Okay, what is incorrect based on your understanding?

THE DEFENDANT: I think that the story that is being told here is not correct.

THE COURT: What story, about the commission of the offense, how it was committed? **13-CR-597(ADC), ECF No. 584** at 20

THE DEFENDANT: No, the crime as such I think that is correct. What I think is that there are some mistakes. Your Honor, when we read this we found numerous mistakes, but none of that has to do with my part nor the crime as such. These are mistakes that might be typographical errors or just the story that has been told in the wrong way.

THE COURT: Mr. Marin it is very important for me to have a clear scenario of what you allude to. If we take it by stages and I would like to have this clear… *Id* at 21.

(….)

THE COURT: So, from there on what we have is pure guideline computations which I imagine you don't have the expertise but your counsel does, and that goes all the way to paragraph 59 which in essence what counsel has been arguing here… *Id* at 23.

THE DEFENDANT: Your Honor, forgive me, I don't want you to waste your time -- when I read this I was actually referring more to the story of my codefendants but I am not saying that the facts and the story as such were incorrect. *Id* at 24.

THE COURT: Mr. Marin, so you are satisfied with the fact that everything that pertains to you and the illegal conduct or actions in which you engaged is correct?

THE DEFENDANT: Completely correct, yes.

THE COURT: Is there anything else that you would like to state at this time and that I should consider?

THE DEFENDANT: Your Honor, what I wanted to say is that this part of my life was just a mistake. I did violence let's say, to my roots and I am completely repentant of this and if you right now don't believe me, or if you don't trust me I ask you that you please take that it into consideration, because this is not going to happen again. Thank you. *Id* at 26.

During that time, petitioner never mentioned being unsatisfied with counsel's recommendation as to whether to accept or not the plea agreement. Neither did petitioner state that he would not have pleaded guilty if counsel would have presented him with a sentence calculation and recommendation akin to the PSR's calculation. Moreover, petitioner did not otherwise manifest discomfort, prior to sentence being imposed, with the Court's determination as to the applicable guidelines or in entering into the plea agreement under the wrong impression as to the recommended sentencing guideline calculation.

Pursuant to all the above, petitioner does not claim that "but for counsel's" ineffectiveness (1) the plea bargaining process would have yielded a different result, or (2) he would have opted to proceed to trial, or that (3) the Court would have imposed a different sentence. Moreover, petitioner does not argue, and—based on the record—cannot argue, that he was unaware of the Court's discretion to either accept or reject the plea agreement's recommendation. Under *Strickland* the petition is thus facially insufficient as it fails to allege prejudice resulting from counsel's ineffectiveness, if any. *Cofske v. U.S.*, 290 F.3d at 441. Therefore, petitioner's ineffective assistance claim lacks a showing of prejudice.

Because failure to meet either prong of *Strickland* is fatal, *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012), petitioner's ineffective assistance argument at **ECF No. 3** is **DENIED.** Even if the Court liberally construes petitioner's *pro se* filing, the petition clearly misses the mark. There is no assertion upon which the Court can rely to make a finding of "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Parsley v. United States*, 604 F.3d 667, 671 (1st Cir. 2010). Even if counsel negotiated

his plea agreement and made recommendations as to whether he should accept that agreement, without a hundred percent certainty of the computation's accuracy, the truth remains that the parties and defendant as well, understood that such computation was advisory, not final and contingent not only to the final determination of his criminal history category but, upon the Court's assessment and final  determination .

### B.  Breach of the plea agreement.

Petitioner argues that the government "promised" him to recommend a sentence at the "lower end of Guidelines of 152 months." **ECF No. 3-**1 at 17. The government broke that promise, petitioner contends, "when it failed to advocate for the agreed upon Total Offense Level of 34 that was expressly stated in the agreement that includes the agreed upon lower role in the offense." *Id*. During sentencing, the government "limited and qualified the plea agreement, ignoring the many other promises it made." The execution of the plea agreement "misled [petitioner] as to the applicable U.S. Sentencing Guidelines and the advisory sentence he was facing prior to his plea, as well as the government's failure to argue for the agreement's terms at sentencing, 'adversely impacted fairness.'" *Id* at 20.

This exact same argument was decided by the Court of Appeals against petitioner. "Issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion[.]" *Singleton v. U.S.*, 26 F.3d 233, 240 (1st Cir. 1994)(quoting *Dirring v. United States*, 370 F.2d 862, 864 (1st Cir. 1967), cited in *Barrett v. United States*, 965 F.2d 1184, 1190 n. 11 (1st Cir.

1992)). Seeing as to nothing has changed and that a more developed record would not add any value to the consideration of this argument,[6] petitioner's argument is denied.

### C. Minor role reduction

A defendant who seeks a minor role adjustment bears the burden of proving his entitlement thereto by a preponderance of the evidence. *U.S. v. Vargas*, 560 F.3d 45, 50–51 (1st Cir. 2009). Petitioner's conclusory argument at **ECF Nos. 3, 3-1** at 25-26 fails to set forth facts for the Court to consider any specific detail of his role as a "leader" within the drug trafficking organization.

A determination of a defendant's role in an offense "cannot be clearly erroneous where it is based on a reasonable inference drawn from the undisputed facts." *United States v. DiIorio,* 948 F.2d 1, 5 (1st Cir. 1991). "[A] defendant who aspires to be classified as a minor participant bears the burden of proving that he is both (i) less culpable than most other participants in the offenses of conviction, and (ii) less culpable than the average miscreant involved in offenses of the same genre." *United States v. Sánchez,* 354 F.3d 70, 74 (1st Cir. 2004).

Petitioner's role in the offense was determined by the Court as that of a leader, allocating a four-point increase under the guidelines. While challenging this determination, petitioner fails to acknowledge the he had already stipulated to a three (3) point enhancement based on his managerial role. The record has plenty of evidence that supports  petitioner's leadership within the drug importation venture inasmuch he was responsible for defining, setting into motion the importation of drugs in the suitcases, the recovery of proceeds and the movement of drugs and

---

[6] Petitioner admits that "the record," at time of filing the petition, "discloses trial counsel's ineffectiveness." **ECF No. 3-1** at 10.

illegal proceeds through Colombia, Venezuela, Puerto Rico and United States ( mainland). The government's evidence clearly included evidence portraying defendant giving instructions and directly communicating with at least sixteen of eighteen other defendants charged. **ECF No. 584** at 28-29.  As stated at the time of sentence, defendant was the highest-ranking member of the trafficking organization and as such it is once again, highlighted as follows:

> I have presided over the sentences of all of these cases and regardless of what the government stipulated if there is one person that appears to be the leader and **only person controlling every single transaction and actions of the remaining codefendants all the way down to defendant number 19, it is your client**. **ECF No. 584** at 8 (emphasis added).

> He is the leader of the scheme, he is the leader of the drugs coming here and he is the one defining how the monies are to be laundered. *Id*.

> As to the objection for the managerial versus leadership role I made my findings. Which I think if the Court of Appeals looks to this case in the sentences of all of the codefendants and the proffers that the government has made as to the evidence available as to each one, Mr. Marín Echeverri emerges as one of those few occasions in which the government is able to prosecute in this jurisdiction someone that resides in Columbia and has managed to put on a scheme that includes Puerto Rico, Venezuela, importation of drugs and distribution and subsequent money laundering along with 18 other codefendants. So, that he is the leader, in the Courts opinion, he is. *Id* at 16-17.

Petitioner has not asserted, much less shown, that he was both less culpable than the other participants in the drug conspiracy and less culpable than most other defendants convicted of comparable crimes. *United States v. Sánchez,* 354 F.3d at 74.

Interpreted in the light most favorable to petitioner, the assertions at **ECF Nos. 3, 3-1** are contradicted by the record. Thus, petitioner's request for a minor role reduction is hereby **DENIED**.

### D.  Credit for time served while detained awaiting extradition in Colombia

Petitioner's final argument stands for the proposition that he is entitled to additional credit for time served while he was detained and waiting to be extradited to the Court's jurisdiction. Upon his arrest in Colombia on "May 26, 2014, and before being extradited to the United States to answer to the instant criminal case, and matter, at hand on December 11, 2014, [petitioner] served, approximately, 6 ½ months in said Colombia prison." **ECF No. 3-1** at 26. Concededly, petitioner "was afforded said 6 ½ month credit for 'time served' in said Colombia prison." *Id*. However, petitioner now requests that the Court "double said 6 ½ month time served, to 13 months, pursuant to Colombian rules of criminal procedure, whereby all prisoners are afforded double 'time served.'" *Id* at 27. In other words, pursuant to an undisclosed Colombian rule, petitioner requests the Court grant him double credit for the time served at a jail in Colombia.

The government responded that this request in no way challenges any aspect of petitioner's federal sentence, but rather its execution. **ECF No. 16** at 12. Thus, the government contends, it is not a cognizable request under habeas relief as it is not a constitutional error, a sentence imposed outside the statutory limits, or an error so fundamental as to render the proceedings invalid. *Id.* Alternatively, the government argues, petitioner is procedurally defaulted by failing to raise this issue on direct appeal. *Id*. Even if the Court were to entertain this argument, the government posits that the federal rules do not support such a relief. *Id*.

Here, the Court did in fact award petitioner credit for his time served at a jail in Colombia, six months, and seventeen days to be precise. Petitioner concedes that point. However, he argues

that the Court has discretion to double that time just because a rule in Colombia allows it.

Contrary to the alleged Colombian rule, 18 U.S.C. § 3585 provides:

> **(b) Credit for prior custody.**-- A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
> **(1)** as a result of the offense for which the sentence was imposed; or
> **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

The Court denies petitioner's request for an unsupported doubling of the time he served in a jail in Colombia pursuant to an alien, undisclosed rule that is facially contrary to the provisions of the United States Code. There is no need to entertain this argument any further.

## IV.   Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C.A. § 2255. To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Considering the nature of the petitioner's claims, a certificate of appealability is hereby **GRANTED**.

## V.      Conclusion

Petitioner's motion at **ECF No. 3** is **DENIED,** and the case is **DISMISSED WITH**

**PREJUDICE**. Certificate of appealability is hereby **GRANTED**.

The Clerk of the Court shall enter judgment accordingly.

**SO ORDERED**

At San Juan, Puerto Rico, on this 30th day of November 2020.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**